# IN THE SUPREME COURT OF IOWA

No. 14–1622

Filed December 23, 2016

**RUSSELL L. NEWHALL,**

Appellee,

vs.

**MARCIA ELAINE NEWHALL ROLL,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Butler County, Gregg R. Rosenbladt, Judge.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Thomas D. Hanson of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellant.

Mark McCormick of Belin McCormick, P.C., Des Moines, and Megan R. Rosenberg of Cady & Rosenberg Law Firm, P.L.C., Hampton, for appellee.

**HECHT, Justice.**

In this partition action, the plaintiff sought partition by sale of one tract of real estate located in Hardin County and another tract located in Butler County. The defendant opposed the proposed partition by sale, preferring partition in kind instead. On appeal from the district court's decision ordering the sale of both tracts, the court of appeals reversed. On further review, we conclude the defendant failed to prove it would be equitable and practicable to partition the tracts in kind and therefore vacate the decision of the court of appeals and affirm the district court's judgment.[1]

## I. Background Facts and Proceedings.

Russell Newhall and Marcia Roll are biological siblings who own two farm properties as tenants in common. The first tract, located in Butler County, was transferred to Russell and Marcia by inter vivos gift from their parents in 2006. The second tract, located in Hardin County, was transferred to Russell and Marcia in 2011 through a testamentary gift from their biological aunt. Russell owns several grain bins and a grain dryer on the Butler County land.

The Butler County tract and the Hardin County tract are both subject to leases. Russell leases and farms the tillable portion of the Butler County farm.[2] Third parties rent pastureland on both the Butler and Hardin County tracts.

---

[1]Our decision in *Roll v. Newhall*, ___ N.W.2d ___ (Iowa 2016) involving the same parties is also filed today. In that case, Marcia asserted Russell could not inherit under their biological mother's will because their biological aunt adopted him after the will was executed but before the testator died.

[2]Although he has farmed the tillable portion of the Butler County tract since 1974, Russell's primary enterprise at the time of trial was farming and raising cattle in North Dakota.

Russell and Marcia have an acrimonious relationship, and Russell sought to sever their interests in the two tracts by agreement on multiple occasions before this litigation was commenced. In October 2007, Russell offered to sell his interest in the Butler County land to Marcia. In May 2012, Russell again offered to sell his interest in the Butler County land or to trade it for Marcia's interest in the Hardin County land. On each occasion, Marcia expressed no interest in Russell's proposed partition of the tracts.

**A. The Consolidated Actions.** In March 2013, Russell filed separate actions against Marcia in Butler and Hardin counties seeking a judicial partition by sale of both tracts. Marcia responded by requesting the properties be partitioned in kind. The two actions were consolidated for trial in Butler County upon joint motion of the parties.

At the trial, both parties presented evidence of the nature and value of the properties. The tract in Butler County consists of 315.30 acres—115 acres devoted to row crops, approximately 150 acres of pastureland and timberland, and the remainder devoted to hay ground and buildings. Russell's expert appraised the Butler County land at $929,000 (excluding the value of the grain bins purchased and installed there by Russell). Marcia's expert appraised the property at a fair market value of $1,200,000 (including the value of the grain bins).

The Hardin County tract consists of 162.92 acres—approximately 110 acres of tillable land and the remainder in pastureland. Russell's expert appraised the Hardin County land at a fair market value of $778,000; Marcia's expert opined that the property's fair market value is $620,000.

Without the value of the grain bins factored in, the difference between the market values of the two properties according to the experts

ranged from $151,000 (Russell's expert) to $535,500 (Marcia's expert). After reviewing the experts' methodology and hearing their testimony, the district court found the experts were both "very credible."

**B. The Parties' Positions in District Court.** At trial, Marcia urged the court to award Russell the Hardin County property and make a specific allotment of the Butler County property to her under Iowa Rule of Civil Procedure 1.1216. *See* Iowa R. Civ. P. 1.1216 (permitting the trial court to allot a specific tract to a specific party). Because the land in Butler County was worth more than the land in Hardin County, Marcia proposed that the distributions could be equalized if the court awarded Russell an additional sum of money or about 70 acres from the Butler County farm, consisting primarily of pasture and hay land.

Russell urged the partition be achieved through a sale of both tracts. In the alternative, Russel requested the Butler County tract be allocated to him if the court were to choose an in-kind distribution in lieu of a sale. Although both parties expressed a desire to receive the Butler County land if the land were partitioned in kind, neither party opposed the sale of the Hardin County land.

The parties presented testimony explaining why the court should award the Butler County land to them if a partition in kind were to be ordered. Both parties were raised there on the family farm, and each claimed an emotional connection with the land and a desire to pass it on to their children who are interested in farming the ground. Although Russell relocated to North Dakota in 2008, he maintained his vocational connection with the Butler County farm, having raised row crops there since 1974.

Marcia claimed a stronger tie to the Butler County farm because she lives nearby and developed her avocation of collecting and selling

antiques on the farm. She further asserted the family farm should be allocated to her because she stayed in Iowa to take care of her parents in their old age while Russell moved to North Dakota in 2008. Marcia also opposed partition by sale of the Butler County tract because a sale would cause her to incur a tax liability in the range of $145,000 to $164,000.

**C. The District Court's Decision.** The district court concluded Marcia did not meet her burden to prove a partition in kind would be equitable and practicable. The court found Marcia's proposed division of the Butler County farm—with the tillable land allocated to her and pasture and hay ground allocated to Russell—would diminish the aggregate value of the property. The court also found the Butler County and Hardin County tracts carried substantially different tax bases, which would complicate efforts to equitably divide the land through an in-kind distribution. Specifically, the party receiving the Hardin County land would receive land with a stepped-up basis while the party receiving all or most of the Butler County land would receive property with a very low basis.

Marcia appealed. We transferred the case to the court of appeals.

**D. Court of Appeals Decision.** The court of appeals reversed in a split decision, concluding that Marcia proved it is both equitable and practicable to award Russell the Hardin County tract, award Marcia the Butler County tract, and order an equalization payment of $75,000 from Marcia to Russell.[3] We granted Russell's application for further review to determine whether the district court erred in ordering partition by sale of

---

[3]Like the district court, the court of appeals found it would be inequitable to divide the Butler County farm between the parties because doing so would decrease the total value of the entire tract and present practical problems of access and fencing of the hay and pasture ground.

the Butler County and Hardin County tracts under the circumstances of this case.

## II. Scope of Review.

Actions to partition real or personal property are equitable proceedings, which we review de novo. Iowa R. Civ. P. 1.1201(1); Iowa R. App. P. 6.907; *see also Martin v. Martin*, 720 N.W.2d 732, 735 (Iowa 2006). In equity cases, the trial court's findings of fact are not binding on us, but we give them weight, especially when they concern a witness's credibility. Iowa R. App. P. 6.904(3)(*g*); *Martin*, 720 N.W.2d at 735.

## III. Analysis.

Our analysis in this case begins with an overview of the legal principles governing partition actions in Iowa. With those principles in mind, we shall determine whether the district court erred in rejecting Marcia's request for a partition in kind in lieu of sale.

**A. Rules Governing Partition Actions in Iowa.** Partition actions are governed by Chapter 651 of the Iowa Code and Division XII of the Iowa Rules of Civil Procedure. *See* Iowa Code §§ 651.1–.6 (2014); Iowa Rs. Civ. P. 1.1201–1.1228. Together with the relevant statutory provisions, the applicable procedural rules establish "a rough legal blueprint" for partitioning concurrently owned real or personal property. N. William Hines, *Joint Tenancies in Iowa Today*, 98 Iowa L. Rev. 1233, 1249–50 (2013).

Prior to the effective date of the Iowa Rules of Civil Procedure in July 1943, partition in kind was favored over partition by sale. *Spies v. Prybil*, 160 N.W.2d 505, 507 (Iowa 1968). At common law and under the previous statutory framework, property was partitioned in kind unless the parties agreed to a sale or the property could not "be equitably divided into the requisite number of shares." *Id.*; *see also* Iowa Code

§ 12326 (1939); *Metcalf v. Hoopingardner,* 45 Iowa 510, 511–12 (1877) (noting the statute permitted partition by sale only if the property could not equitably be divided in kind). But "[t]his is no longer true in Iowa." *Spies,* 160 N.W.2d at 508. The rules adopted in July 1943 effected a "change in emphasis." *Id.* at 507 (quoting an advisory committee comment to then Iowa Rule of Civil Procedure 278). We explained in *Spies* that the new rule "is unequivocal in favoring partition by sale and in placing upon the objecting party the burden to show why this should not be done in the particular case." *Id.* at 508.

Under the present framework, a co-owner of real or personal property may request a judicial partition of the property in one of two ways: (1) partition by sale or (2) partition in kind. Iowa R. Civ. P. 1.1201; *cf.* Iowa Code § 651.3 (2014) (permitting partial partitions in kind). In a partition by sale, the property is sold and the sale proceeds are distributed according to the parties' respective interests. 59A Am. Jur. 2d *Partition* § 117, at 94 (2015). When real estate is partitioned in kind, the property is divided into parcels, and the parcels are allotted to the parties by share. 68 C.J.S. *Partition* §§ 1, 146, at 91, 131–32 (2009). The party seeking a partition in kind has the burden to prove it would be both equitable and practicable. Iowa R. Civ. P. 1.1201(2). "For good reasons shown, the court may order referees making a partition in kind to allot a particular tract or article to a particular party." Iowa R. Civ. P. 1.1216.

Some limitations on in-kind partitions of real estate are well-established under Iowa law. In-kind partition is not appropriate if a division into separate parcels would depreciate their aggregate value. *Murphy v. Bates,* 224 Iowa 389, 391, 276 N.W. 29, 30–31 (1937); *Branscomb v. Gillian,* 55 Iowa 235, 236, 7 N.W. 523, 523 (1880).

Further, "if a division in kind is impracticable and cannot be effected without sacrifice in value and to the best interest of all parties," then a sale must be ordered. *Nehls v. Walker*, 215 Iowa 167, 168–69, 244 N.W. 850, 851 (1932). Notably, these limiting principles were recognized even at a time when partition in kind was favored in Iowa. *See Branscomb*, 55 Iowa at 236, 7 N.W. at 523.

On first glance, Iowa law appears somewhat unique in that our "default" method of partition is partition by sale. *Compare* Iowa R. Civ. P. 1.1201(2) ("Property shall be partitioned by sale and division of proceeds, unless a party prays for partition in kind by its division into parcels and shows that such partition is equitable and practicable."), *with* 68 C.J.S. *Partition* § 125, at 113. Our research reveals only one other state— Kentucky—expresses a preference for partition by sale. *See* Ky. Rev. Stat. Ann. § 389A.030(3) (West, Westlaw current through 2016 regular sess.). That said, although only Iowa and Kentucky have codified the preference for judicial sale, several other states tend not to utilize equitable remedies that could obviate the need for a sale. *See* Yun-Chien Chang & Lee Anne Fennell, *Partition and Revelation*, 81 U. Chi. L. Rev. 27, 30 (2014) ("Most American jurisdictions have a common law rule that purports to favor partition in kind, but scholars suggest that courts usually order partition by sale."). One observer has noted that although most states have claimed adherence "to the historical preference for physical division," there is a general trend toward judicial sales either because the parties desire sale "or because courts are easily convinced that sale is necessary for the fair treatment of the parties." John G. Casagrande, Jr., Note, *Acquiring Property Through Forced Partitioning Sales: Abuses and Remedies*, 27 B.C. L. Rev. 755, 771 & n.141 (1986).

**B. Two Proposals for a Partition In Kind.** In this case, Marcia is the party seeking a partition in kind. Consistent with Iowa's preference for partition by sale, Marcia thus bears the burden of proving a partition in kind would be both equitable and practicable. Iowa R. Civ. P. 1.1201(2).

Marcia offers two alternatives for an in-kind division that she contends would be equitable and practicable. Both alternatives allocate all or most of the Butler County farm to her. The first alternative allocates most of the Butler County farm to her and gives Russell the Hardin County farm plus a 70-acre parcel from the northern portion of the Butler County property. The second alternative allocates all of the Butler County property to Marcia and gives Russell the Hardin County property plus an equalization payment offsetting the difference in value between the two farms.

Russell rejects both alternatives and instead urges the sale of both tracts. However, he contends in the alternative that if the court concludes a partition in kind is equitable and practical, the Butler County property should be allocated to him. Like Marcia, Russell testified at trial and asserted in his brief that he would approve of a partition that allocates all or most of the Butler County real estate to him; however, also like Marcia, he does not wish to receive an in-kind distribution of the Hardin County farm.

We now turn to the question of whether Marcia met her burden of proof under either of her proposed alternatives.

1. *Alternative 1: Hardin tract plus a parcel of Butler tract.* Under the first alternative, Marcia would receive the tillable portion of the Butler County land and Russell would receive the tillable portion of the land in Hardin County. The remaining acres would then be split between

the parties, with Russell receiving the remainder of the Hardin County land and a 70-acre parcel of the northernmost portion of the Butler County land.

Although Russell and his expert conceded at trial that the division of the Butler County land proposed by Marcia might appear feasible *on paper*, they posited it would be neither equitable nor practicable *in reality*. Having farmed the land for forty years, Russell credibly opined that parceling off the northernmost portion of the Butler County land consisting primarily of timber and hay ground would produce a parcel of land that is not economically viable as a separate farming unit for several reasons. Specifically, he explained (1) the parcel lacks access to fresh water for livestock in the winter; (2) although the owner of the proposed parcel could gain access to the east side, a river obstructs access to its west side; (3) the existing fences on the parcel are inadequate for raising livestock there; (4) the part of the parcel that is suitable for pasture is subject to recurrent flooding; and (5) the parcel is too small to be economically viable for raising livestock.

Marcia presented testimony from an expert appraiser disputing Russell's opinion on problems with access to the proposed parcel and fencing if the parcel were to be separated from the Butler County farm. These potential problems are insubstantial and surmountable, Marcia's expert asserted; and the parcel allocated to Russell from the Butler County farm could be drawn entirely from the west side to avoid any need to cross the river. Simply put, Marcia's expert opined that a practical and equitable division of the Butler County farm could be achieved.

Like the trial court, we credit Russell's testimony and find the in-kind division of the Butler County farm proposed by Marcia would be

impractical. Russell has farmed the tillable ground for more than forty years. Because of this experience, Russell is more intimately familiar than any other witness with the farm's row-crop productivity potential, its topographical features rendering parts of it vulnerable to flooding, and its suitability for hay and pasture ground. We find this experience also gives persuasive force to Russell's opinion on the limited suitability of access routes to the northern portion of the farm that Marcia proposes to allocate to him. Lastly, we find Russell's experience as a cattle farmer also gives persuasive force to his opinions on the unattractiveness of the proposed parcel for raising livestock. Accordingly, we find Marcia failed to meet her burden to establish the in-kind division of the Butler County farm is practical.

Marcia's proposed in-kind division of the Butler County farm fails for yet another reason. Russell's expert appraiser persuasively opined that—based on practical farming considerations—the value of the acres Marcia proposed for allocation to Russell would be diminished if they were separated from the rest of the farm. Accordingly, we conclude Marcia's proposed in-kind division setting aside part of the Butler County farm to Russell must be rejected because the division into separate parcels would depreciate their aggregate value. *See Murphy,* 224 Iowa at 391, 276 N.W. at 30–31; *Branscomb*, 55 Iowa at 236, 7 N.W. at 523.

2. *Alternative 2: Hardin tract plus equalization payment.* Under the second alternative, Marcia would receive the Butler County farm and Russell would receive the Hardin County farm, along with a sum of money to equalize the value of the allocations. The payment of money as a means of offsetting unequal distributions of real property in partition actions is commonly referred to as "owelty."

Owelty is an equitable remedy developed at common law and used in partition actions to equalize the value of property each party receives through the payment of a sum of money from the recipient of the higher-value property to the recipient of the lower-value property. *Owelty, Black's Law Dictionary* (3d pocket ed. 2006). Courts utilize the remedy when "[i]n making divisions along natural and practical lines the allotments cannot . . . be made of equal area or value" without impairing the aggregate value of the parcels, and it would be disadvantageous to sell the property. *See Sawin v. Osborn*, 126 P. 1074, 1075 (Kan. 1912); 68 C.J.S. *Partition* § 132, at 120; *see also* 59A Am. Jur. 2d *Partition* § 154, at 123–24. Courts in jurisdictions favoring partition in kind regard owelty as preferable to partition by sale. *See, e.g., Schnell v. Schnell*, 346 N.W.2d 713, 720–21 (N.D. 1984) (stating that partition in kind with owelty should be preferred to sale); *Chesmore v. Chesmore*, 484 P.2d 516, 518 (Okla. 1971) (noting partition in kind with owelty is preferable to sale); *see also* 68 C.J.S. *Partition* § 145, at 130. For that reason, owelty is commonly justified as a means of avoiding judicial sale. 59A Am. Jur. 2d *Partition* § 155, at 124; *see, e.g., Sawin*, 126 P. at 1075; *R.R. Thompson Estate Co. v. Kamm*, 213 P. 417, 418 (Or. 1923); *Updike v. Adams*, 52 A. 991, 991–92 (R.I. 1902) (per curium).

Russell asserts owelty is not recognized as an available remedial tool under Iowa law. He contends the Iowa Rules of Civil Procedure governing partition actions leave no middle ground for owelty, permitting only partition by sale or partition in kind. *See* Iowa R. Civ. P. 1.1201(2) ("Property shall be partitioned by sale and division of the proceeds, unless a party prays for partition in kind . . . , and shows that such partition is equitable and practicable."); *see also* 68 C.J.S. *Partition* §§ 2, 132, at 10, 120 (noting owelty is often "enabled by statute"). Russell

further posits that our recognition of the doctrine of owelty would undermine Iowa's statutory preference for partition by sale. *See* Iowa R. Civ. P. 1.1201(2).

Marcia contends owelty has long been recognized by courts of equity and should be adopted in Iowa as an appropriate remedial tool in partition actions. Because it is an equitable remedy and partition actions are equitable proceedings, Roll contends sound public policy should lead this court to adopt and apply owelty in this case.

Upon consideration, we need not decide whether the doctrine of owelty is available in Iowa. Under the circumstances of this case, Marcia cannot prove a superior claim of entitlement to the Butler County farm. Like Marcia, Russell was raised on the farm and claims an abiding connection to it.[4] Like Marcia, Russell has a child to whom he wishes to succeed him in ownership of the family farm. And although Marcia and her daughter live in Iowa in close proximity to the Butler County farm and Russell lives in North Dakota, he has maintained an intimate connection with the property by continuously farming it. Under these unique circumstances, we cannot say the Butler County farm should be set aside to Marcia "[f]or good reasons shown." Iowa R. Civ. P. 1.1216. Nor can we conclude it would be equitable to allocate the Butler County farm to Marcia and award the Hardin County farm and some equalizing

---

[4]We do not overlook Marcia's contention that Russell's claim of attachment to the family farm is less profound than hers because he made overtures to sell or trade his interest several years ago. In our view, Russell's unaccepted offers to amicably separate his ownership interest from Marcia's should be viewed as a good faith effort to resolve differences rather than an expression of insubstantial attachment to the family farm where he grew up and farmed as an adult for more than forty years. Likewise, we do not consider Marcia's refusal to pursue Russell's settlement overtures giving her an opportunity to obtain the Butler County land as evidence that she lacks a substantial attachment to the Butler County farm.

amount of money to Russell.[5] Although Marcia's connection with the family farm is sincere and profound, we cannot say it is measurably superior to Russell's or that equity therefore demands the property be allocated to her. Thus, we do not decide in this case whether to adopt the doctrine of owelty and leave that question for another day.

### IV. Conclusion.

We conclude Marcia failed to meet her burden to prove a partition in kind allocating all or most of the Butler County farm to her would be practical and equitable. Accordingly, we vacate the decision of the court of appeals and affirm the district court's decision.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED**.

---

[5]We have not overlooked Marcia's contention that she will suffer an adverse tax consequence from the sale of the Butler County farm. The parties have a low tax basis in the property, and they both could experience a substantial gain and potential tax liability from the sale. As both parties hold the same basis in the property, we cannot say the potential tax consequences of the sale augur in favor of Marcia's claim that equitable principles should lead this court to allocate the Butler County farm to her.